1
2
3
4
5
6
7
8
9
10
11

United States District Court
Northern District of California

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

FINLEY KELLER,

          Plaintiff,

    v.

EXPERIAN INFORMATION SOLUTIONS, INC., et al.,

          Defendants.

Case No. 16-CV-04643-LHK

**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS**

Re: Dkt. No. 24, 26

Plaintiff Finley Keller ("Plaintiff") sues Defendants Experian Information Solutions, Inc. ("Experian") and Wells Fargo Bank, N.A. ("Wells Fargo") for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681s-2(b), and the California Consumer Credit Reporting Agencies Act ("CCRAA"), Cal. Civ. Code § 1785.25(a). Before the Court are Defendants' motions to dismiss. ECF Nos. 24, 26. Having considered the submissions of the parties, the relevant law, and the record in this case, the Court GRANTS Defendants' motions to dismiss.

I.      **BACKGROUND**

A.      **Factual Background**

On February 7, 2012, Plaintiff filed for Chapter 13 bankruptcy.  FAC ¶ 93.[1]  "Chapter 13 of the Bankruptcy Code affords individuals receiving regular income an opportunity to obtain some relief from their debts while retaining their property.  To proceed under Chapter 13, a debtor must propose a plan to use future income to repay a portion (or in the rare case all) of his debts over the next three to five years."  *Bullard v. Blue Hills Bank*, 135 S. Ct. 1686, 1690 (2015).  "If the bankruptcy court confirms the plan and the debtor successfully carries it out, he receives a discharge of his debts according to the plan."  *Id.* at 1690.  In the instant case, Plaintiff's bankruptcy plan was confirmed on December 10, 2012.  FAC ¶ 97.  Plaintiff does not allege that Plaintiff has successfully paid her debt according to the plan, or that Plaintiff's debt has been discharged.

On January 19, 2016, Plaintiff ordered a three-bureau credit report from Experian.  *Id.* ¶ 98.  In the report, Plaintiff allegedly noticed that "multiple trade lines continued to report Plaintiff's accounts with past due balances, inaccurate balances, open/or with late payments."  *Id.* ¶ 99.  In response to the report, on April 12, 2016, Plaintiff disputed the allegedly inaccurate tradelines with the three credit reporting bureaus: Equifax, Experian, and Trans Union, LLC ("TransUnion").  *Id.*  ¶ 100.  According to Plaintiff, "Plaintiff's dispute letter specifically put each Creditor on notice that Plaintiff had filed for bankruptcy and the account was not reporting the bankruptcy accurately or worse not at all."  *Id.*  Moreover, Plaintiff's dispute letter "noted that there should not be any past due balance reported, the account should not be listed as charged off, transferred or sold, with an inaccurate monthly payment or that the account is in collections."  *Id.*

On May 16, 2016, Plaintiff ordered a second three-bureau credit report from Experian.  *Id.* ¶ 103.  Plaintiff alleges that she "was not pleased to notice that the inaccuracies had not been

---

[1] Wells Fargo requests judicial notice of documents from Plaintiff's bankruptcy.  *See* ECF No. 27 (Request for Judicial Notice, or "RJN").  These documents are matters of public record and the proper subjects of judicial notice.  *See* Fed. R. Evid. 201(b); *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001), *overruled on other grounds by Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002) ("Under Fed. R. Evid. 201, a court may take judicial notice of matters of public record." (internal quotation marks omitted).  The Court accordingly GRANTS Wells Fargo's unopposed request for judicial notice.

Case No. 16-CV-04643-LHK
ORDER GRANTING MOTIONS TO DISMISS

updated or removed." *Id.* ¶ 104.  Plaintiff alleges that Citizens Bank "was reporting Plaintiff's account . . . as in collections, charged off, with a balance in the amount of $153,826.00 and $156,350.00 and with a past due balance in the amount of $29,278.00 and $32,676.00, despite the Court ordered treatment of its claim under the terms of Plaintiff's Chapter 13 plan of reorganization." *Id.* ¶ 106.  Plaintiff further alleges that Wells Fargo "was reporting Plaintiff's account . . . with a balance in the amount of $19,650.00, a past due balance in the amount of $19,650.00, and monthly payments owed in the amount of $495.00, despite the Court ordered treatment of its claim under the terms of Plaintiff's Chapter 13 plan of reorganization." *Id.* ¶ 107. Plaintiff states that "[t]he balance and past due balance listed by Defendant[s] do not comport with Metro 2 industry standards." *Id.*

## B.    Procedural History

On August 12, 2016, Plaintiff filed a Complaint in this Court against Experian, Equifax, Inc., Citizens Bank, and Wells Fargo.  ECF No. 1.  Plaintiff asserted a cause of action under the FCRA against each Defendant, and Plaintiff asserted a cause of action under the CCRAA against Citizens Bank and Wells Fargo. *See id.* at ¶¶ 22–40.

On September 13, 2016, Experian moved to dismiss the Complaint.  ECF No. 9.  Rather than respond to Experian's motion to dismiss, Plaintiff filed on October 3, 2016 an amended complaint (First Amended Complaint, or "FAC").  ECF No. 17.  Accordingly, on November 3, 2016, this Court denied Experian's motion to dismiss as moot.  ECF No. 23.

On November 3, 2016, Experian moved to dismiss the FAC.  ECF No. 24 ("Experian Mot.").  On December 1, 2016, Plaintiff filed a response to Experian's motion to dismiss.  ECF No. 28 ("Pl. Resp. to Experian Mot.").  On December 21, 2016, Experian filed a reply.  ECF No. 39 ("Experian Reply").

On November 7, 2016, Plaintiff filed a notice of voluntary dismissal of Defendant Equifax. ECF No. 25.

On November 21, 2016, Wells Fargo moved to dismiss the FAC.  ECF No. 26 ("Wells Fargo Mot.").  Plaintiff responded on December 5, 2016.  ECF No. 29 ("Pl. Resp. to Wells Fargo

Mot."). Wells Fargo replied on December 12, 2016. ECF No. 33 ("Wells Fargo Reply").[2]

## II.    LEGAL STANDARD

### A.  Motion to Dismiss Under Rule 12(b)(6)

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss an action for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009) (internal citation omitted).

For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). However, a court need not accept as true allegations contradicted by judicially noticeable facts,

---

[2]    On December 29, 2016, Plaintiff filed a Notice of Contrary Case Law in Response to Wells Fargo's Reply in Support of its Motion to Dismiss. ECF No. 43 ("Notice of Contrary Case Law"). Plaintiff's Notice of Contrary Case Law cites to several cases that, according to Plaintiff, show that Wells Fargo is incorrect in asserting that a Chapter 13 plan does not "create[] a new, binding contract with the creditors." *Id.*

On January 6, 2017, Wells Fargo filed an administrative motion arguing that Plaintiff's Notice of Contrary Case Law was procedurally improper, and requested that this Court strike Plaintiff's Notice of Contrary Case Law. ECF No. 45.

The Court agrees with Wells Fargo. Under Civil Local Rule 7-3(d), "[o]nce a reply is filed, no additional memoranda, papers, or letters may be filed without prior Court approval." Civil L.R. 7-3(d). A Plaintiff may file an additional paper after the Defendant's reply only if the additional filing is (1) an Objection to Reply Evidence "[i]f new evidence has been submitted in the reply;" or (2) a Statement of Recent Decision if "a relevant judicial opinion [is] published after the date the opposition or reply was filed." *Id.* Plaintiff's filing is neither an Objection to Reply Evidence or a Statement of Recent Decision, and Plaintiff did not request the Court's approval prior to filing the Notice of Contrary Case Law. Accordingly, the Court GRANTS Wells Fargo's administrative motion to strike Plaintiff's filing as procedurally improper and STRIKES Plaintiff's Notice of Contrary Case Law. *See Moran v. GMAC Mortg., LLC*, 2014 WL 3853833, at *2 (N.D. Cal. Aug. 5, 2014) (striking a Plaintiff's filing because the filing was not authorized by Civil Local Rule 7-3(d)).

4

*Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and a "court may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into one for summary judgment, *Shaw v. Hahn*, 56 F.3d 1061, 1064 (9th Cir. 2011).  Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179 1183 (9th Cir. 2004).

### B.  Leave to Amend

If the court concludes that a motion to dismiss should be granted, it must then decide whether to grant leave to amend.  Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 . . . [is] to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (citation omitted). Nonetheless, a district court may deny leave to amend a complaint due to "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment."  *See Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008) (alteration in original).

### III.    DISCUSSION

Plaintiff asserts a FCRA claim against both Wells Fargo and Experian, and Plaintiff asserts a CCRAA claim against Wells Fargo.  Prior to addressing the merits of Plaintiff's claims, however, the Court must first address the threshold issue of Article III standing.  According to Wells Fargo, pursuant to the United States Supreme Court's decision in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), Plaintiff does not have standing to bring her claims.  Thus, the Court first addresses Article III standing, and then the Court turns to address the Plaintiff's FCRA claims and the Plaintiff's CCRAA claim.

Case No. 16-CV-04643-LHK
ORDER GRANTING MOTIONS TO DISMISS

United States District Court
Northern District of California

## A.      Article III Standing

Wells Fargo contends that, under the U.S. Supreme Court's decision in *Spokeo*, Plaintiff has failed to satisfy the injury-in-fact requirements of Article III of the U.S. Constitution. Wells Fargo Mot. at 16. In order to establish Article III standing, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 136 S. Ct. at 1547 (internal quotation marks omitted). "To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id.* at 1548. Wells Fargo asserts that Plaintiff has failed to allege an "injury in fact." Wells Fargo Mot. at 16. However, for the reasons discussed below, the Court disagrees.

In *Spokeo*, the plaintiff filed a class action complaint against a consumer reporting agency ("CRA"), alleging that the CRA violated the FCRA by providing inaccurate information about him in a generated credit report. *Id.* at 1546. The Ninth Circuit found that the plaintiff had properly alleged injury-in-fact because "the violation of a statutory right is usually sufficient injury to confer standing" and that the plaintiff alleged that the defendant "violated *his* statutory rights, not just the statutory rights of other people," and because the plaintiff's "personal interests in the handling of his credit information are individualized rather than collective." *Id.* (internal quotation marks omitted).

The U.S. Supreme Court reversed and remanded to the Ninth Circuit. Specifically, the U.S. Supreme Court found that, in finding that the plaintiff had established "injury in fact," the Ninth Circuit elided the "concrete" and "particularized" inquiries. *Id.* at 1548. According to the U.S. Supreme Court, a plaintiff could not "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id.* at 1549. Rather, "a 'concrete' injury must be 'de facto'; that is, it must actually exist," although it does not have to be "tangible." *Id.* (quoting Black's Law Dictionary 479 (9th ed. 2009)). The U.S. Supreme Court stated that "[i]n determining whether an intangible harm constitutes injury in fact, both history and

6

the judgment of Congress play important roles." *Id.*  Further, the U.S. Supreme Court made clear "that the risk of real harm [could] satisfy the requirement of concreteness." *Id.* at 1549.  For example, the U.S. Supreme Court explained "the law has long permitted recovery by certain tort victims even if their harms may be difficult to prove or measure." *Id.*  "A plaintiff in such a case need not allege any *additional* harm beyond the one Congress has identified." *Id.*

Turning to the FCRA specifically, the *Spokeo* Court explained that Congress "plainly sought to curb the dissemination of false information" in passing the FCRA. *Id.* at 1550. However, the U.S. Supreme Court also recognized that "not all inaccuracies [under the FCRA] cause harm or present any material risk of harm." *Id.* at 1550.  The U.S. Supreme Court held that the Ninth Circuit's "standing analysis was incomplete," and thus the U.S. Supreme Court remanded to the Ninth Circuit without taking a "position as to whether the Ninth Circuit's ultimate conclusion—that [the plaintiff] adequately alleged an injury in fact—was correct." *Id.*

Here, as discussed more fully below, Plaintiff alleges that Defendants violated the FCRA and CCRAA by incorrectly reporting Plaintiff's delinquent debt despite Plaintiff's Chapter 13 bankruptcy. *See* FAC 107.  The Court finds that this is a sufficiently "concrete" injury-in-fact. *See Spokeo*, 136 S. Ct. at 1549.  Unlike the reporting of an incorrect zip code, which the *Spokeo* Court said could not confer Article III standing, *id.* at 1549–50, Plaintiff here alleges that Defendant has violated the FCRA by inaccurately reporting whether Plaintiff has a debt and whether that debt is delinquent. FAC ¶¶ 106–07.  Inaccurate reporting about whether Plaintiff has a debt and whether that debt is delinquent could harm a Plaintiff's credit and employment prospects. *Larson v. Trans Union, LLC*, 2016 WL 4367253, at *3 (N.D. Cal. Aug. 11, 2016) (finding that an allegedly inaccurate reporting of a consumer as a possible terrorist or criminal, in violation of the FCRA, was a sufficiently "concrete" injury because it caused the plaintiff emotional distress and could harm the plaintiff's employment and credit prospects); *see also Patel v. Trans Union LLC*, 2016 WL 6143191, at *3 (N.D. Cal. Oct. 21, 2016) (same).  Thus, assuming that the Defendants' reporting of the existence and delinquency of Plaintiff's debt was in fact inaccurate—a question that the Court discusses below in the context of the merits of Plaintiff's

Case No. 16-CV-04643-LHK
ORDER GRANTING MOTIONS TO DISMISS

1   FCRA claim—the Court finds that Plaintiff has alleged a sufficiently "concrete" injury for

2   purposes of Article III standing.  *Spokeo*, 136 S. Ct. at 1549–50.  Accordingly, the Court turns to

3   address whether Defendants' reporting of Plaintiff's debt was inaccurate under the FCRA or

4   CCRAA.

5   **B.     FCRA**

6         Congress enacted the FCRA "to ensure fair and accurate credit reporting, promote

7   efficiency in the banking system, and protect consumer privacy."  *Gorman v. Wolpoff &*

8   *Abramson, LLP*, 584 F.3d 1147, 1153 (9th Cir. 2009) (quoting *Safeco Ins. Co. of Am. v. Burr*, 551

9   U.S. 47, 52 (2007)).  To ensure that credit reports are accurate, the FCRA imposes duties both on

10  CRAs and "on the sources that provide credit information to [consumer reporting agencies], called

11  'furnishers' in the statute."  *Id.*  In the instant case, Experian does not dispute that it qualifies as a

12  consumer reporting agency under the FCRA, and Wells Fargo does not dispute that it qualifies as

13  a furnisher under the FCRA.

14        The obligations of CRAs are described in 15 U.S.C. § 1681i.  Under that section of the

15  FCRA, consumer reporting agencies must conduct a reasonable "reinvestigation" of reported

16  credit information if a consumer disputes the contents of the report.  15 U.S.C. § 1681i(a); *see also*

17  *Thomas v. TransUnion, LLC*, 197 F. Supp. 2d 1233, 1236 (D. Or. 2002) (discussing the

18  reinvestigation requirements for CRAs under the FCRA).  Specifically, within 30 days of

19  receiving a notice from a consumer dispute, a credit reporting agency must "conduct a reasonable

20  reinvestigation to determine whether the disputed information is inaccurate and record the current

21  status of the disputed information, or delete the item from the file." 15 U.S.C. § 1681i(a)(1)(A).

22  Additionally, a CRA is required to "provide notification of the dispute to any person who provided

23  any item of information in dispute" so that the furnisher may conduct its own investigation as

24  required by § 1681s-2(b).  *See* § 1681i(a)(2)(A).  The FCRA creates a private right of action for

25  willful or negligent noncompliance with its provisions.  *Gorman*, 584 F.3d at 1154 (citing 15

26  U.S.C. §§ 1681n, o).

27        The obligations of furnishers are described in 15 U.S.C. § 1681s-2b.  Under that section of

28

8

the FCRA, furnishers have certain obligations that are triggered when the furnishers receive notice from the CRA that the consumer disputes the information. *Gorman*, 584 F.3d at 1154. Specifically, after receiving a notice of dispute, the furnisher shall:

> (A) conduct an investigation with respect to the disputed information;
> (B) review all relevant information provided by the consumer reporting agency . . . ;
> (C) report the results of the investigation to the consumer reporting agency;
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information . . . ; and
> (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1) . . .
>> (i) modify that item of information;
>> (ii) delete that item of information; or
>> (iii) permanently block the reporting of that item of information.

15 U.S.C. § 1681s-2(b)(1).

The FCRA creates a private right of action for willful or negligent noncompliance with either § 1681i or 1681s-2(b). *Gorman*, 584 F.3d at 1154 (citing 15 U.S.C. §§ 1681n, o). If a failure to comply with either § 1681i or § 1681s-2(b) is negligent, a plaintiff may recover "any actual damages sustained by the consumer as a result of the failure." 15 U.S.C. § 1681o(a)(1). If a failure to comply with either § 1681i or § 1681s-2(b) is willful, a consumer may recover actual damages or statutory damages between $100 and $1000, as well as any appropriate punitive damages. 15 U.S.C. § 1681n(a).

Additionally, a plaintiff must establish "that an actual inaccuracy exist[s] for a plaintiff to state a claim" for a violation of § 1681i or § 1681s-2(b). *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 890 (9th Cir. 2010); *see also Hernandez v. Wells Fargo Home Mortg.*, 2015 WL 1204985, at *2–3 (D. Nev. Mar. 16, 2015) (holding that an actual inaccuracy must exist to state a claim under § 1681s-2(b)); *Mortimer v. JP Morgan Chase Bank, N.A.*, 2012 WL 3155563, at *3 (N.D. Cal. Aug. 2, 2012) (same). Thus, even if a furnisher or CRA fails to conduct a reasonable investigation or otherwise fails to fulfill its obligations under the FCRA, if a plaintiff cannot

Case No. 16-CV-04643-LHK
ORDER GRANTING MOTIONS TO DISMISS

United States District Court
Northern District of California

1   establish that a credit report contained an actual inaccuracy, then the plaintiff's "claims fail as a

2   matter of law." *Carvalho*, 629 F.3d at 890.

3        Experian and Wells Fargo argue Plaintiff's FAC must be dismissed because Plaintiff fails

4   to identify any inaccurate or misleading statements in Plaintiff's credit report.  In response,

5   Plaintiff argues that "[t]he information that was being reported on Plaintiff's credit report after the

6   confirmation of [Plaintiff's] chapter 13 plan of financial reorganization was both inaccurate and

7   misleading and does not comport with the industry standards that cover credit reporting and

8   bankruptcy." Pl. Opp. to Experian Mot. at 2.  Specifically, Plaintiff asserts that "Plaintiff's

9   confirmed chapter 13 plan modifies [Plaintiff's] secured and unsecured debts and the confirmation

10  order is a final and binding judgment on the status of those debts" and that "[r]eporting a debt

11  differently than its treatment runs afoul of the confirmation order and res judicata effect of the

12  confirmation order." *Id.* at 3.

13       The Court has repeatedly rejected Plaintiff's argument.  In *Blakeney v. Experian Info.*

14  *Sols., Inc.*, 2016 WL 4270244 (N.D. Cal. Aug. 15, 2016), this Court held that although reporting

15  delinquent payments may be misleading if the debts have been discharged in bankruptcy, "it is not

16  misleading or inaccurate to report delinquent debts that have *not* been discharged." *Id.* at *5.  In

17  *Jaras v. Experian Info. Sols., Inc.*, 2016 WL 7337540, at *3 (N.D. Cal. Dec. 19, 2016), this Court

18  held that "as a matter of law, it is not misleading or inaccurate to report delinquent debts during

19  the pendency of a bankruptcy proceeding prior to the discharge of the debts."  Other courts in this

20  district have consistently reached the same conclusion.  *See Mortimer v. JP Morgan Chase Bank,*

21  *N.A.*, 2012 WL 315563, at *3 (N.D. Cal. Aug. 2, 2012) ("*Mortimer I*") ("While it might be good

22  policy in light of the goals of bankruptcy protection to bar reporting of late payments while a

23  bankruptcy petition is pending, neither the bankruptcy code nor the FCRA does so."); *Mortimer v.*

24  *Bank of Am., N.A.*, 2013 WL 1501452, at *4 (N.D. Cal. Apr. 10, 2013) ("*Mortimer II*") (finding

25  that reporting delinquencies during the pendency of bankruptcy is not misleading so long as the

26  creditor reports that the account was discharged through bankruptcy and the outstanding balance is

27  zero); *Giovani v. Bank of Am., N.A.*, 2012 WL 6599681, at *6 (N.D. Cal. Dec. 18, 2012) ("*Giovani*

28

10

Case No. 16-CV-04643-LHK
ORDER GRANTING MOTIONS TO DISMISS

United States District Court
Northern District of California

*I*") (holding that it was not misleading or inaccurate for a furnisher to report overdue payments on debtor's account during pendency of Chapter 7 bankruptcy petition but prior to discharge); *Giovanni v. Bank of Am., N.A.*, 2013 WL 1663335, at *6 (N.D. Cal. Apr. 17, 2013) ("*Giovanni II*") (same); *Harrold v. Experian Info. Sols., Inc.*, 2012 WL 4097708, at *4 (N.D. Cal. Sept. 17, 2012) ("[R]eports of delinquencies in payment while bankruptcy proceedings are still ongoing is not 'incomplete or inaccurate' information.").

As discussed at length in *Jaras*, *Blakeney*, and other cases, the legal status of a debt does not change until the debtor is discharged from bankruptcy.  11 U.S.C. § 1328; *Blakeney*, 2016 WL 4270244, at *6 ("Plaintiff is not entitled to receive a discharge of debts covered under Plaintiff's Chapter 13 bankruptcy plan until Plaintiff has completed all payments provided for under the Chapter 13 bankruptcy plan.").  Confirmation of a payment plan is not sufficient to alter the legal status of a debt because if a debtor fails to comply with the Chapter 13 plan, the debtor's bankruptcy petition can be dismissed, in which case the debt will be owed as if no petition for bankruptcy was filed.  *See In re Blendheim*, 803 F.3d 477, 487 (9th Cir. 2015) ("[D]ismissal returns to the creditor all the property rights he held at the commencement of the Chapter 13 proceeding."); *see also Elliott*, 150 B.R. at 40 ("[E]ven if a confirmed Chapter 13 plan did bar challenges to the underlying claims, *res judicata* would not apply where the confirmed plan had been dismissed.").  Thus, a confirmation order does not constitute a final determination of the amount of the debt, and it is not misleading or inaccurate to report delinquent debt during the pendency of a bankruptcy proceeding but before discharge.  In short, even if Plaintiff is correct that Plaintiff's credit report did not reflect the terms of Plaintiff's Chapter 13 bankruptcy plan, this would not be an inaccurate or misleading statement that could sustain a FCRA claim against either Experian or Wells Fargo.

Plaintiff's invocation of "industry standards" does not undermine this conclusion.  FAC ¶ 80 ("Post confirmation the accepted accurate credit reporting standard for reporting balances is to report the balance owed under the Chapter 13 plan terms.").  Indeed, this Court recently rejected an identical "industry standards" argument in *Devincenzi v. Experian Information Solutions*, 2017

11

1  WL 86131, at *6 (N.D. Cal. Jan. 10, 2017).  As this Court explained in *Devincenzi*, courts in this

2  district have repeatedly held that accurately reporting a delinquent debt during the pendency of a

3  bankruptcy is not rendered unlawful simply because a Plaintiff alleges that the reporting, though

4  accurate, was inconsistent with industry standards.  *Id.*  For example, in *Mortimer II*, the court

5  held that "[t]o the extent that the account was delinquent during the pendency of the bankruptcy,

6  failure to comply with the CDIA guidelines does not render the report incorrect."  2013 WL

7  1501452, at *12.  Similarly, in *Sheridan v. FIA Card Services, N.A.*, 2014 WL 587739 (N.D. Cal.

8  Feb. 14, 2014), the court followed *Mortimer* in "reject[ing] the argument that failure to comply

9  with industry standards violates the FCRA where the information itself is nonetheless true."  *Id.* at

10  *5.  Additionally, in *Mestayer v. Experian Information Solutions*, *Inc.*, 2016 WL 7188015 (N.D.

11  Cal. Dec. 12, 2016) ("*Mestayer III*"), the court held that at least when a credit report acknowledges

12  the existence of a pending bankruptcy, reporting a delinquent debt during the pendency of a

13  bankruptcy is not inaccurate or misleading "even if [the report] otherwise did not fully comply

14  with" industry standards.  *Id.* at *3; *see also Mestayer v. Experian Info. Solus., Inc.*, 2016 WL

15  3383961 (N.D. Cal. June 20, 2016) (same); *Hupfauer v. Citibank, N.A.*, 2016 WL 4506798 (N.D.

16  Ill. Aug. 19, 2016) (citing *Mortimer* for the proposition that "Plaintiff's argument that Experian's

17  reporting deviated from guidelines set by the Consumer Data Industry Association is beside the

18  point, as these guidelines do not establish the standards for accuracy under the FCRA").  The same

19  is true here.  *See Devincenzi*, 2017 WL 86131, at *6.

20       Plaintiff cites *Nissou-Raban v. Capital One Bank (USA), N.A.*, 2016 WL 4508241 (S.D.

21  Cal. June 6, 2016), for the proposition that alleging a violation of reporting standards can in some

22  circumstances be sufficient to state a claim under the FCRA.  However, *Nissou-Raban* held only

23  that if a furnisher reports a debt that is the subject of a pending bankruptcy, it could be misleading

24  for the furnisher to describe that debt as "charged off"—that is, seriously delinquent and likely

25  uncollectable—rather than to specify that the debt is the subject of a pending bankruptcy.  *Id.* at

26  *4.  Thus, at most, *Nissou-Raban* stands for the proposition that a furnisher that reports delinquent

27  debts during the pendency of a bankruptcy should also report the fact that a bankruptcy is pending

28

12

Case No. 16-CV-04643-LHK
ORDER GRANTING MOTIONS TO DISMISS

1   so that creditors know that those delinquent debts may be discharged in the future.  However,

2   *Nissou-Raban* does not endorse Plaintiff's argument that reporting a delinquent debt itself violates

3   industry standards and is misleading or inaccurate.  *Devincenzi*, 2017 WL 86131, at *6

4   (distinguishing *Nissou-Raban* from a situation where, as here, the plaintiff alleged only that the

5   defendants' reporting of plaintiff's delinquent debt during plaintiff's Chapter 13 bankruptcy

6   violated industry standards and was thus incorrect under the FCRA).  On the contrary, *Nissou-*

7   *Raban* explicitly recognized that "pleading facts that show a furnisher reported information that

8   was accurate while bankruptcy was pending but before the debt was discharged does not, as a

9   matter of law, provide the predicate inaccuracy necessary to state a FCRA or a CCRAA claim."

10   *Nissou-Raban*, 2016 WL 4508241, at *3.

11        The issue in *Nissou-Raban* is therefore not presented in the instant case.  Plaintiff alleges

12   generally that, on Plaintiff's three-bureau credit report, "[s]ome accounts . . . [were] not reporting

13   the bankruptcy . . . at all," FAC ¶ 99, but Plaintiff never specifies which accounts failed to mention

14   the pending bankruptcy.   More specifically, Plaintiff alleges that Wells Fargo "was reporting

15   Plaintiff's account . . . with a balance in the amount of $19,650.00, a past due balance in the

16   amount of $19,650.00, and monthly payments owed in the amount of $495.00, despite the Court

17   ordered treatment of its claim under the terms of Plaintiff's Chapter 13 plan of reorganization."

18   FAC ¶ 107.  Plaintiff never alleges, however, that Wells Fargo failed to report Plaintiff's pending

19   bankruptcy.  *See id.*  Further, Plaintiff never alleges that Experian failed to report Plaintiff's

20   pending bankruptcy.  *See generally* FAC ¶¶ 104–07; Experian Mot. at 8 ("While Plaintiff alleges

21   that she ordered a 'three bureau' report from Experian, she does not allege that Experian reported

22   the purportedly inaccurate information in that document," as opposed to the other bureaus).  To

23   the contrary, Plaintiff's FAC makes only general and unspecified allegations that her three-bureau

24   report contained inaccuracies, and that the CRAs reported misleading and inaccurate information,

25   but the FAC does not allege any conduct that is specific to Experian.  *See, e.g.*, FAC ¶¶ 123–34.[3]

26

27   ³ Plaintiff's FAC alleges that "Defendant Citizens Bank was reporting Plaintiff's account . . . as in
    collections, charged off, with a balance in the amount of $153,826.00."  FAC ¶ 106.  However, as

28

Case No. 16-CV-04643-LHK
ORDER GRANTING MOTIONS TO DISMISS

United States District Court
Northern District of California

1     Accordingly, because Plaintiff's FAC does not allege that either Wells Fargo or Experian failed to

2     report the fact of Plaintiff's pending bankruptcy, the Court need not consider whether such a

3     failure would be misleading or inaccurate under the FCRA.  *Devincenzi*, 2017 WL 86131, at *7

4     (dismissing identical FCRA claims because the Plaintiff "never allege[d] that [the furnisher] or

5     Experian failed to mention the pending bankruptcy").

6          In sum, Plaintiff's vague assertion that "reporting a past due balance post confirmation

7     does not comport with industry standards," FAC ¶ 133, is not enough to overcome this Court's

8     consistent holding that as a matter of law it is not misleading or inaccurate to report a delinquent

9     debt during the pendency of a bankruptcy.  Thus, the Court rejects Plaintiff's argument that his

10    credit report was misleading or inaccurate for reporting delinquent debt during the pendency of his

11    Chapter 13 bankruptcy.[4]  *See Devincenzi*, 2017 WL 86131, at *7.

12         The Court therefore GRANTS Experian's and Wells Fargo's motions to dismiss Plaintiff's

13    FCRA claims based on the reporting of delinquent debt during the pendency of a bankruptcy.  The

14    Court finds as a matter of law that reporting a delinquent debt during the pendency of a

15    bankruptcy is not inaccurate or misleading, and thus these claims are dismissed with prejudice.

16    *See Jaras v. Experian Info. Solus., Inc.*, 2016 WL 7337540, at *3 (N.D. Cal. Dec. 19, 2016) ("[A]s

17    a matter of law, it is not misleading or inaccurate to report delinquent debts during the pendency of

18    a bankruptcy proceeding prior to the discharge of the debts.").  Therefore, because Plaintiff

19    "cannot make a prima facie case of inaccurate reporting" with respect to these claims, the Court

20    finds that "amendment . . . would be futile."  *Carvalho*, 629 F.3d at  892.[5]

21

22    discussed above, Plaintiff never alleges that Experian reported this information, nor does Plaintiff
      raise this in Plaintiff's opposition to Experian's motion to dismiss.
      [4] Because the Court agrees with Defendants that it is not misleading or inaccurate to report

23    delinquent debt during the pendency of a Chapter 13 bankruptcy, the Court need not reach

24    Defendant's argument that Plaintiff has failed to sufficiently plead willfulness or actual damages.
      *See* Experian Mot. at 12–13.
      [5] Plaintiff asserts in its opposition to Wells Fargo's motion to dismiss that "it appears as if

25    Defendant has failed to even account for payments that have been received by the chapter 13

26    trustee."  Pl. Opp. to Wells Fargo at 5.  Plaintiff also contends that Wells Fargo "has continually
      increased the amount of the past-due balance."  Pl. Opp. to Wells Fargo at 7.  However, Plaintiff's

27    FAC contains no factual allegations supporting such assertions, and the Court does not consider
      these arguments in ruling on Plaintiff's motion to dismiss.  *See Schneider v. Cal. Dep't of Corr.*,

28
                                                    14

United States District Court
Northern District of California

1    However, the Court grants leave to amend on two bases.  First, as discussed above,

2  Plaintiff has also alleged generally that certain accounts in the May 16, 2016 credit report

3  contained no indication at all that the debts were the subject of a pending bankruptcy.  Plaintiff has

4  not stated that these allegations apply either to Wells Fargo or to Experian, and therefore the Court

5  does not consider these allegations at this time or decide whether they would be sufficient to state

6  a claim.  However, the Court grants leave to amend for Plaintiff to clarify whether this allegation

7  applies either to Wells Fargo or Experian, and, if so, to provide more detail regarding these

8  allegations.  *Devincenzi*, 2017 WL 86131, at *7 (granting Plaintiff leave to amend FCRA claims to

9  allege whether the furnisher or Experian failed to report Plaintiff's bankruptcy).  In doing so,

10  however, the Court warns that Plaintiff must provide "much more specific allegations" regarding

11  what precisely Experian and Wells Fargo reported and how these reports could be misleading,

12  including production or detailed description of "the actual credit report to which" Plaintiff objects.

13  *Mestayer III*, 2016 WL 7188015, at *3.  If Plaintiff fails to correct these deficiencies, this claim

14  too will be dismissed with prejudice.

15    Second, Plaintiff also asserts in its opposition to Wells Fargo's motion to dismiss that "it

16  appears as if Defendant has failed to even account for payments that have been received by the

17  chapter 13 trustee."  Pl. Opp. to Wells Fargo at 5.  Plaintiff also contends that Wells Fargo "has

18  continually increased the amount of the past-due balance."  Pl. Opp. to Wells Fargo at 7.

19  However, Plaintiff's FAC contains no factual allegations supporting such assertions, and the Court

20  does not consider these arguments in ruling on Plaintiff's motion to dismiss.  *See Schneider v. Cal.*

21  *Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule

22  12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such

23  s a memorandum in opposition to a defendant's motion to dismiss.").  The Court will grant

24  Plaintiff leave to amend to add allegations that Wells Fargo failed to take into account payments

---

151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6)
dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such s a
memorandum in opposition to a defendant's motion to dismiss.").

Case No. 16-CV-04643-LHK
ORDER GRANTING MOTIONS TO DISMISS

by the trustee and that Plaintiff disputed her credit report on this basis.  *Devincenzi* , 2017 WL

86131, at *8 (granting Plaintiff leave to amend to add allegations that the defendant failed to take

into account payments by the trustee and that Plaintiff disputed his credit report on that basis); *see*

*also Lopez*, 203 F.3d at 1127 (holding that "a district court should grant leave to amend . . . unless

it determines that the pleading could not possibly be cured by the allegation of other facts.").

**B.     CCRAA**

Section 1785.25(a) of the CCRAA provides that "[a] person shall not furnish information

on a specific transaction or experience to any consumer credit reporting agency if the person

knows or should know that the information is incomplete or inaccurate."  Cal. Civ. Code §

1785.25(a).  The CCRAA provides for a private right of action to enforce this provision.  *Id.* §§

1785.25(g), 1785.31(a).  "[B]ecause the CCRAA 'is substantially based on the Federal Fair Credit

Reporting Act, judicial interpretation of the federal provisions is persuasive authority and entitled

to substantial weight when interpreting the California provisions.'"  *Carvalho*, 629 F.3d at 889

(quoting *Olson v. Six Rivers Nat'l Bank*, 111 Cal. App. 4th 1, 12 (2003)).

Plaintiff asserts a CCRAA claim only against Wells Fargo.  Similar to Plaintiff's FCRA

claim, Plaintiff argues that Wells Fargo violated the CCRAA by reporting misleading and

inaccurate information.  FAC ¶¶ 135–141.   The parties' arguments about the accuracy and

completeness of this information in the context of a CCRAA claim mirrors the parties' FCRA

claim arguments.  For the reasons stated above, Plaintiff has not sufficiently alleged that Wells

Fargo reported inaccurate information.  Therefore, the Court GRANTS the motion to dismiss

Plaintiff's CCRAA claim as to Wells Fargo.  The Court grants leave to amend only as to those

portions of Plaintiff's CCRAA claim for which the Court has granted leave to amend Plaintiff's

FCRA claims.

**IV.     CONCLUSION**

For the foregoing reasons, the Court GRANTS Experian's and Wells Fargo's motions to

dismiss.  The Court DISMISSES WITH PREJUDICE Plaintiff's FCRA and CCRAA claims based

on the reporting of delinquent debt during the pendency of a bankruptcy.  The Court DISMISSES

United States District Court
Northern District of California

16

1    WITH LEAVE TO AMEND Plaintiff's FCRA and CCRAA claims based on failure to report the

2    fact of a pending bankruptcy and the failure to account for payments by the bankruptcy trustee.[6]

3          Should Plaintiff elect to file an amended complaint curing the deficiencies identified

4    herein, Plaintiff shall do so within thirty (30) days of the date of this Order.  Failure to meet the

5    thirty-day deadline to file an amended complaint or failure to cure the deficiencies identified in

6    this Order will result in a dismissal with prejudice of Plaintiff's claims.  Plaintiff may not add new

7    causes of action or parties without leave of the Court or stipulation of the parties pursuant to Rule

8    15 of the Federal Rules of Civil Procedure.

9    **IT IS SO ORDERED.**

10

11   Dated: January 13, 2017

12                                                    *Lucy H. Koh*

13                                                    LUCY H. KOH
                                                     United States District Judge
14

15

_____

16   [6]      Wells Fargo also argues that Plaintiff is judicially estopped from bringing her claim
     because Plaintiff has failed to amend her bankruptcy schedules to disclose the existence of this
17   lawsuit and the underlying cause of action as an asset. Wells Fargo Mot. at 25; RJN Ex. C.  "The
     United States Supreme Court has identified three factors that courts may consider in determining
18   whether to apply the doctrine of judicial estoppel: (1) whether a party's position is "clearly
     inconsistent" with its earlier position; (2) whether the first court accepted the party's earlier
19   position; and (3) whether the party seeking to assert an inconsistent position would derive an
     unfair advantage if not estopped." *Sharp v. Nationstar Mortg. LLC*, 2016 WL 6696134, at *5
20   (citing *New Hampshire v. Maine*, 532 U.S. 742, 750–51 (2001)).
           Here, Plaintiff has taken a "clearly inconsistent" position in the bankruptcy proceedings by
21   failing to disclose the existence of this lawsuit. *See Sharp*, 2016 WL 6696134, at *5 ("Plaintiffs
     had taken a 'clearly inconsistent' position in the bankruptcy proceedings by failing to disclose the
22   claims against [Defendants]."). However, at this time, the Court does not have enough
     information to know whether the bankruptcy court has "accepted" Plaintiff's position by "relying
23   on [Plaintiff's] nondisclosure of potential claims." *Id.* at *6 (quoting *Hamilton*, 270 F.3d at 784–
     85).  Accordingly, at this time, the Court does not exercise its discretion to judicially estop
24   Plaintiff's claims.  *Id*.  Plaintiff is, however, on notice of the consequences of Plaintiff's failure to
     disclose her pending lawsuit if the bankruptcy court were to discharge Plaintiff's debt or otherwise
25   "accept[]" Plaintiff's position. *See Ah Quin*, 733 F.3d at 271 ("If a plaintiff-debtor omits a
     pending (or soon-to-be filed) lawsuit from the bankruptcy schedules and obtains a discharge (or
26   plan confirmation), judicial estoppel bars the action."); *Hamilton*, 270 F.3d at 784 ("Our holding
     does not imply that the bankruptcy court must actually discharge debts before the judicial
27   acceptance prong may be satisfied.  The bankruptcy court may 'accept' the debtor's assertions by
     relying on the debtor's nondisclosure of potential claims in many other ways.").
28
                                                    17
     Case No. 16-CV-04643-LHK
     ORDER GRANTING MOTIONS TO DISMISS

United States District Court
Northern District of California